UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DOUGLAS KAMPER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-CV-107-JAR |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of | ) |
| Social Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Douglas Kamper's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the reasons discussed below, the decision of the Commissioner will be affirmed.

**I.    PROCEDURAL BACKGROUND**

On April 27, 2018, Plaintiff protectively filed an application for DIB with an alleged disability onset date of November 1, 2016. (Tr. at 75, 222-230). Plaintiff claimed disability due to "problems from carpal tunnel surgeries." (*Id.* at 253). After his application was initially denied on July 27, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 157-163). On October 2, 2019, ALJ Christina Mein held a video hearing. (*Id.* at 112-142). Plaintiff was represented by counsel at the hearing, and the ALJ heard evidence from both Plaintiff and an impartial vocational expert ("VE").

---

[1] Kilolo Kijakazi became Acting Commissioner of the Social Security Administration on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should therefore be substituted for Andrew Saul as the Defendant in this suit.

1

After considering the testimony and record evidence, the ALJ issued an unfavorable decision on October 18, 2019. (*Id.* at 71-83). On December 1, 2020, the Appeals Council of the Social Security Administration ("SSA") denied Plaintiff's request for review. (*Id*. at 1-4). Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See Sims v. Apfel*, 560 U.S. 103, 107 (2000). Plaintiff filed this appeal on January 27, 2021. (Doc. 1). The Commissioner filed an Answer on July 1, 2021. (Doc. 14). Plaintiff then filed a Brief in Support of the Complaint (Doc. 27), and the Commissioner filed a Brief in Support of the Answer (Doc. 32).

## II.   FACTS

This Court adopts Plaintiff's Statement of Material Facts (Doc. 27-1) to the extent they are admitted by the Commissioner. (Doc. 32-1). These statements provide a fair and accurate description of the relevant record before the Court. Additional facts will be discussed as necessary to address the parties' arguments.

## III.   LEGAL STANDARD

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Adkins v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 547, 550 (8th Cir. 2018). Substantial evidence in the record as a whole is "a more rigorous standard than simply substantial evidence, which is evidence that a reasonable mind might accept as adequate to support the Commissioner's conclusion." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1358 (8th Cir. 2022) (citations and internal quotations omitted). The Court must "take into account record evidence that fairly detracts from the ALJ's decision." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (citation omitted).

In performing this assessment, the Court defers heavily to the findings and conclusions of the SSA. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (citation omitted). This Court may

not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided differently. *Koch v. Kijakazi*, 4 F.4th 656, 663 (8th Cir. 2021). In other words, this Court will "disturb the ALJ's decision only if it falls outside the available zone of choice." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (citation omitted).

Under the SSA regulations, an individual is disabled if they have an inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505. The SSA has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citation omitted).

First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the regulations ("Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history, and the process is complete.

If the claimant does not have an impairment which meets or equals a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. Pt. 404, Subpt. P,

3

App. 1, § 12.00; 20 C.F.R. §§ 404.945, 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his or her impairments. *See generally* S.S.R. 96–8p, 1996 WL 374184, at *2 (July 2, 1996). At step four, the ALJ must determine whether, given the RFC, the claimant can return to his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Perks v. Astrue*, 687 F.3d 1086, 1091–92 (8th Cir. 2012). If the claimant can still perform past relevant work, he or she is not disabled. If not, the ALJ proceeds to step five to determine whether the claimant is able to make an adjustment to other work in light of his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he or she is disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).

Through step four, the burden remains with the claimant to prove he or she is disabled. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform jobs existing in significant numbers within the national economy. *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004).

## IV.    DECISION OF THE ALJ

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity after his alleged disability onset date. (Tr. at 76). At step two, the ALJ concluded that Plaintiff had the following severe impairments: history of bilateral carpal tunnel release with residual right forearm nerve sensory loss, and generalized osteoarthritis. (*Id.*). The ALJ further acknowledged that Plaintiff had non-severe impairments including atrial fibrillation, a right ankle injury, depression, anxiety, and alcohol abuse (*Id.* at 76-77). The ALJ did address Plaintiff's occasional

4

dizziness by providing in the RFC that Plaintiff could not be exposed to unprotected heights or moving machinery. At step three, the ALJ found that Plaintiff did not have any impairment or combination of impairments through the date last insured which met or equaled a Listing. (*Id.* at 78). Plaintiff has not challenged any of these conclusions.

"After careful consideration of the entire record," the ALJ assessed Plaintiff's RFC as only permitting light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations: "[S]hould avoid concentrated exposure to vibration. He cannot climb ladders, crawl, work at unprotected heights or work around hazardous moving machinery." (*Id.*). Critically, while the ALJ limited Plaintiff to light work, she found that Plaintiff could "frequently finger and handle." (*Id.*)

Plaintiff worked as a Tree Trimmer for virtually his entire professional life. The ALJ determined that this qualified as past relevant work. (*Id.* at 82). At step four, the ALJ found that Plaintiff would be unable to perform this past work based upon the RFC. (*Id.* at 82). The ALJ relied on testimony from the VE, whose testimony the ALJ deemed to be consistent with the Dictionary of Occupational Titles ("DOT").

The ALJ moved on to step five and noted there were other jobs existing in significant numbers in the national economy which Plaintiff could perform considering his age, education, work experience, and RFC. (*Id.*). Again relying on the VE and DOT, the ALJ stated Plaintiff could perform the jobs of Electrical Assembler, Garment Sorter, and Merchandise Marker, along with certain sedentary jobs. (*Id.* at 83). Proceeding in the alternative, the ALJ found that even if she limited Plaintiff to occasional fingering and handling, he could perform light work including Furniture Rental Consultant, Photo Counter Clerk, and Usher. (*Id.*). Thus, the ALJ found Plaintiff was not disabled.

## V.   PLAINTIFF'S MEDICAL RECORDS AND PERSONAL HISTORY

At the time of Plaintiff's hearing before the ALJ, he was 45 years old and had not worked in nearly three years. (*Id.* at 116, 120). Plaintiff expressed to the ALJ that he stopped working in November 2016 because his "hands got so bad [he] couldn't hold on to chainsaws or climb a ladder or pull [himself] up a tree." (*Id.* at 120).[2] Plaintiff has not attempted to find work since that time. He explained that his hands keep aching and going numb, and he also suffers from dizzy spells. (*Id.* at 122). Despite these impairments, Plaintiff acknowledged that he drives every day and up to six hours per week, visits his father and grandmother weekly, manages his own money, hunts and fishes (albeit with some limitations), barbecues, washes dishes each morning, mows an acre of lawn using a riding mower, gardens (including plowing with a tractor, planting, and harvesting), ties up trotline hooks, and woodworks. (*Id.* at 119-128). Plaintiff's descriptions of his impairments and activities of daily living at the hearing were broadly consistent with the function report he completed upon applying for DIB. (*Id.* at 252-70).

The medical records before this Court begin in May 2017 when hand surgeon Dr. Bruce Schlafly completed an evaluation of Plaintiff. (*Id.* at 321-24; Doc. 27-1 at ¶ 1). Dr. Schlafly stated that Plaintiff "describes typical symptoms of bilateral carpal tunnel syndrome, and he also provided an occupational history of heavy repetitive use of his hands." (*Id.* at 323). Dr. Schlafly did note that Plaintiff's "physical findings in the office today are negative" and suggested this "might be due to [Plaintiff's] rest off work over the past six months." (*Id.*). Per Dr. Schlafly's recommendation, Plaintiff underwent Electromyography (EMG) / Nerve Conduction Velocity (NCV) testing on June 28, 2017. (*Id.* at 325-29; Doc. 27-1 at ¶ 2). The testing revealed "severe,

---

[2] This answer is slightly inconsistent with other evidence in the record. In his function report, Plaintiff indicated he stopped working due to "[p]roblems with supervisor." (Tr. at 253). Plaintiff's medical records reference a deposition where Plaintiff appears to have stated that he "was considered to have quit [his prior employment] as he blew over the appropriate level on an alcohol test that he relates to mouthwash with 5% alcohol." (*Id.* at 464).

right worse than left, sensory motor median neuropathies across the carpal tunnels with axonal involvement" and "moderate left and right ulnar neuropathies across the elbows." (*Id.* at 326). But the study was "not impressive for an additional cervical radiculopathy," there were no Tinel or Phalen signs at the carpal tunnels, and "[m]otor testing [was] unremarkable." (*Id.*; Doc. 32-1 at ¶ 1).

Dr. Shawn Kutnik evaluated Plaintiff on August 23, 2017. (*Id.* at 461-64; Doc. 27-1 at ¶ 4). Plaintiff told Dr. Kutnik that the numbness and throbbing pain in his hands "really began in 1998." (*Id.* at 461). Plaintiff informed Dr. Kutnik he stopped fishing due to these issues but does take care of some farm animals, mow the gras using a tractor a few times per year, hunt deer on a seasonal basis, and exercise three times per week. (*Id.* at 463; Doc. 32-1 at ¶ 2). Dr. Kutnik acknowledged that the EMG confirms underlying diagnosis of bilateral carpal and cubital tunnel syndromes but "[u]nusually, [Plaintiff's] physical exam findings are negative on evaluation today and during his evaluation with Dr. Schlafly." (*Id.* at 463). Dr. Kutnik ultimately recommended surgical intervention in the form of staged, bilateral carpal and cubital tunnel releases. (*Id.* at 464; Doc. 27-1 at ¶ 4).

On December 12, 2017, Dr. Kutnik performed the left-sided carpal tunnel release and left ulnar nerve neuroplasty with no complications. (*Id.* at 457; Doc. 27-1 at ¶ 5). Plaintiff attended an early re-evaluation only three days later because he decided to take his own splint off, "the reasons for [which] are exceptionally unclear" according to Dr. Kutnik (*Id.* at 467). Plaintiff reported "complete resolution of numbness and tingling to the hands and fingers and pain is controlled." (*Id.*). On December 26, 2017, Dr. Kutnik performed the same procedure on the right hand, again with no complications. (*Id.* at 459; Doc. 27-1 at ¶ 7). Plaintiff had a follow-up appointment approximately two weeks later. (*Id.* at 468; Doc. 27-1 at ¶ 8). Plaintiff stated there was now

complete resolution of his numbness and tingling on the right hand but some episodes with the left hand. Dr. Kutnik concluded that Plaintiff "overall [ ] is doing just fine." (*Id.*).

The remaining medical records follow a similar pattern. On January 24, 2018, Plaintiff informed Dr. Kutnik there was "some recurrence bilaterally" of numbness and tingling, but Dr. Kutnik stated it "does not appear to be causing [Plaintiff] significant discomfort." (*Id.* at 469; Doc. 27-1 at ¶ 9). Plaintiff demonstrated "excellent motion" on physical exam. (*Id.*). Dr. Kutnik started Plaintiff in occupational therapy and noted that it "is certainly unusual to have had complete resolution of symptoms with such sudden recurrence in a[n] asymmetric fashion" and it "is quite unclear what exactly is going on here." (*Id.*). Plaintiff proceeded to have multiple occupational therapy sessions where he reported issues, particularly in the right hand. (*Id.* at 356-395; Doc. 27-1 at ¶¶ 10-13, 15, 18-20, 22).

Plaintiff eventually underwent follow-up EMG/NCV testing. (*Id.* at 340; Doc. 27-1 at ¶ 16). Dr. Kutnik reviewed the testing, which indicated "improvement across the board consistent with recent release and improving function." (*Id.* at 471). Dr. Kutnik informed Plaintiff that "the EMG confirms successful decompression" and the "cause of his worsening symptoms remains unclear." (*Id.*). On March 14, 2018, Dr. Kutnik removed all restrictions and "strongly recommend[ed] that [Plaintiff] really use the arm for all activities." (*Id.* at 473; Doc. 27-1 at ¶ 21). Finally, on April 11, 2018, Dr. Kutnik found that Plaintiff had "full motion of elbow, wrist, and fingers," "no additional treatment is otherwise indicated," and Plaintiff "may be released [maximum medical improvement] at this time with no restrictions to the arms." (*Id.* at 474; Doc. 27-1 at ¶ 23). Plaintiff continued to experience numbness, tingling, and pain in his hands. A few months later, Dr. Kutnik referred Plaintiff to neuropathy and suggested that Plaintiff's issues have no connection to his work injury and are not correlated with the carpal tunnel. (*Id.* at 477; Doc. 27-1 at ¶ 24).

On November 13, 2018, Dr. David Volarich completed an independent medical evaluation. (*Id.* at 1352-1360). Dr. Volarich found Plaintiff had 35% permanent partial disability of the bilateral wrists and elbows. (*Id.* at 1358). But Dr. Volarich did not recommend surgery and instead suggested a home exercise program for the upper extremities and use of over-the-counter analgesics for discomfort. (*Id.* at 1359). Dr. Volarich opined that Plaintiff "can perform activities for self-care." (*Id.*). Plaintiff has also provided a medical source statement from his treating primary care provider, Dr. Deborah Depew. (*Id.* at 1347-49; Doc. 27-1 at ¶ 28). Dr. Depew's medical source statement suggests Plaintiff has substantial restrictions including being unable to sit for more than four hours per workday or occasionally lift 20 pounds. (*Id.* at ¶ 1348). The Court agrees with the Commissioner that Plaintiff's medical records and proposed material facts which post-date the ALJ's decision are mostly not relevant to this Court's analysis because they do not generally relate to Plaintiff's conditions before the date last insured. (Doc. 32-1 at 1). *See Lucas v. Berryhill*, No. 4:17-CV-2312 DDN, 2018 WL 4504814, at *4 (E.D. Mo. Sept. 20, 2018) (internal quotations omitted) ("An ALJ need not consider medical records created after the date last insured unless they relate to [the claimant's] condition before the date last insured.").[3]

## VI.   ANALYSIS

Opinion Evidence

Plaintiff contends that the ALJ did not properly consider the opinion evidence. Because Plaintiff filed his application after March 27, 2017, this Court applies 20 C.F.R. § 404.1520c. Under the new regulations, an ALJ is no longer required to "defer to give any specific evidentiary

---

[3] In October 2020, Dr. Michael Snyder expressed his opinion that Plaintiff had a "suboptimal" response to the decompression surgery. (Doc. 27-1 at ¶ 35). The Court has considered this fact because it pertains to Plaintiff's condition during the disability period. This opinion, however, does not change the Court's analysis and is generally consistent with the medical record wherein Plaintiff continued to express discomfort post-surgery. The Court notes that Dr. Snyder prescribed Gabapentin and did not recommend further surgery. (*Id.*).

weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of such opinions by considering five factors: supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The ALJ acknowledged application of these new regulations in her opinion. (Tr. at 80).

  The ALJ explicitly considered four medical opinions in rendering her RFC. First, the ALJ evaluated the opinion of Dr. Judee Bland, the state agency medical consultant. The SSA regulations recognize that state agency medical consultants are "highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1); *see also Collins v. Kijakazi*, No. 6:20-CV-3237-MDH, 2021 WL 3909670, at *4 (W.D. Mo. Aug. 31, 2021) ("The new regulations require the ALJ to consider the opinions of state agency medical consultants because they are highly qualified experts in Social Security disability evaluation."). In July 2018, Dr. Bland assessed that Plaintiff was limited to light work with "occasional fingering and handling on the right due to decreased excursion and some weakness after successful CTS surgery-possible underlying neuropathy." (Tr. at 150).

  The ALJ found Dr. Bland's opinion "not fully persuasive," specifically noting that Plaintiff demonstrated "mild clinical abnormalities" and "reported doing extensive work with his hands on a regular basis." (*Id.* at 80). As discussed further below, the Court finds that the ALJ appropriately evaluated the objective medical evidence and Plaintiff's activities of daily living. Though not stated in these exact words, the ALJ effectively determined that Dr. Bland's opinion regarding fingering and handling was not consistent with the entire record or adequately supported. The Court agrees with the Commissioner that the "ALJ's analysis could have been more detailed with

10

regard to Dr. Bland," but cannot say that the analysis fails to satisfy the requirements for evaluating opinions under the new regulations. (Doc. 32 at 16).

In the alternative, the Court finds that Plaintiff's argument raises a harmless error. Like the ALJ, Dr. Bland determined Plaintiff was not disabled because Plaintiff could obtain employment even if limited to light work with occasional fingering and handling. At the hearing, the VE identified three jobs available in significant numbers in the national economy which Plaintiff could perform even if limited to occasional fingering and handling. (Tr. at 141). To show an error was not harmless, Plaintiff "must provide some indication that the ALJ would have decided differently if the error had not occurred." *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (citation omitted). It appears clear to the Court that the ALJ would have reached the same ultimate decision even if she fully adopted Dr. Bland's findings, and any failure to properly consider Dr. Bland's opinion was therefore harmless. *See England v. Astrue*, 490 F.3d 1017, 1023-24 (8th Cir. 2007) ("Although the hypothetical does appear to have understated these limitations, this infirmity was harmless because the VE testified that even with the additional limitations . . . proposed by [claimant's] attorney . . . [claimant] could perform jobs available in the economy."); *see also Voorhies v. Colvin*, No. 15-CV-523-W-DGK-SSA, 2016 WL 4761730, at *2 (W.D. Mo. Sept. 12, 2016) (holding any discounting of medical opinion harmless where ALJ did not prejudice claimant by excluding the purported limitations from RFC).

Second, the ALJ evaluated the opinion of worker's compensation examiner Dr. Volarich, who opined in his November 2018 report that Plaintiff had various functional limitations and had limited weight tolerance. The ALJ determined that Dr. Volarich's assessment was "inconsistent with [Plaintiff's] own statement of his laborious daily activities . . . as well as his testimony that he can lift 20 pounds and carry it for 5 minutes." (Tr. at 81). The ALJ also stated that Dr. Volarich's proposed limitations were inconsistent with his own clinical observations and objective medical

11

findings. *See Despain v. Berryhill*, 926 F.3d 1024, 1028 (8th Cir. 2019) (mild objective findings did not support restrictive limitations).

Plaintiff contends that the ALJ "failed to discuss the positive exam findings by Dr. Volarich, but instead focused on the negative exam findings." (Doc. 27 at 5). While the ALJ must "develop the record fully and fairly," he or she "is not required to discuss every piece of evidence submitted," and an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (citation omitted). It appears clear to the Court that the ALJ properly assessed Dr. Volarich's report for consistency and supportability by comparing Dr. Volarich's findings with the objective medical evidence and Plaintiff's hearing testimony.

Third, the ALJ found the opinion of Dr. Depew, Plaintiff's primary care provider, "not persuasive." (Tr. at 81). The Court finds this assessment reasonable and supported by the evidence. Dr. Depew provided a checklist medical source statement in which she only diagnosed Plaintiff with "bilateral carpal & cubital tunnel syndromes with neuropathy." (*Id.* at 1347). Yet Dr. Depew found Plaintiff could only sit for four hours and stand and walk for two hours in an eight-hour workday. (*Id.* at 1346). The ALJ determined this finding was "inconsistent with the medical evidence, which indicates no exertional impairment that would prevent the claimant from sitting, standing, and walking for eight total hours." (*Id.* at 81). The ALJ further noted that Dr. Depew's assessment was internally inconsistent and conflicted with Plaintiff's own descriptions of his capabilities. (*Id.*). Finally, the ALJ reviewed Dr. Depew's treatment records and recognized that Plaintiff only discussed upper extremity discomfort on one visit in June 2019 despite numerous other appointments. (*Id.* at 80).

Under applicable precedent, these were entirely appropriate bases for the ALJ to find Dr. Depew's opinion unpersuasive. *See Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018)

("[Commissioner] may also assign little weight to a treating physician's opinion when it is either internally inconsistent or conclusory."); *Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (no error in ALJ's discounting of "cursory checklist statement" which included "significant impairments and limitations that are absent from [provider's] treatment notes and [claimant's] medical records"). As to each medical opinion raised by Plaintiff, the Court finds that the ALJ properly discounted the opinion for good reasons after considering supportability, consistency, and other relevant factors as required under the applicable regulations.[4]

Medical Evidence Supporting the RFC

Plaintiff contends that no medical opinion supports the RFC and the ALJ exceeded her authority by inferring limitations from the objective medical findings. An ALJ determines the RFC "based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (citation omitted). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017). But an ALJ "is not limited to considering medical evidence exclusively," as even though the "RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).

At the outset, the Court notes that remand is not necessary merely because the ALJ did not find any of the four medical opinions fully persuasive. There "is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th

---

[4] The ALJ also evaluated the opinion of Plaintiff's surgeon, Dr. Kutnik. (Tr. at 81). Plaintiff has not challenged this element of the ALJ's opinion, likely because Dr. Kutnik indicated Plaintiff had no restrictions relating to his carpal tunnel syndrome.

13

Cir. 2016) (citation omitted). The Eight Circuit has consistently affirmed decisions even where the RFC was not supported by a specific medical opinion. *See Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012).

In this case, the ALJ performed an extensive review of relevant evidence, including Plaintiff's substantial medical records, before concluding Plaintiff was capable of light work with certain additional limitations. This analysis was entirely consistent with the requirements of SSR 96-8p and other applicable regulations. The ALJ assessed objective medical evidence which "shows that the [Plaintiff's] upper extremity symptoms have largely resolved with surgery and are less limiting than the [Plaintiff] alleged." (Tr. at 79). The ALJ also carefully described various objective findings, including that Plaintiff consistently had negative Tinel and Phalen signs, "full motion of the elbows, wrists, and fingers bilaterally" post-surgery, and other "fairly benign" findings by Dr. Volarich. (*Id.* at 79-80). Despite Plaintiff's claims to the contrary, the ALJ cited numerous sources of objective medical evidence across Plaintiff's many physician visits and tests.

As discussed further below, the ALJ also reasonably concluded that Plaintiffs' activities of daily living, including driving his car, mowing the lawn, hunting, gardening, and woodworking, "are wholly inconsistent with allegations of debilitating pain in the upper extremities." (*Id.* at 80). This is an entirely reasonable finding supported by substantial evidence in the record as a whole, as discussed further below with regard to the credibility of Plaintiff's subjective allegations of disabling pain. The Eighth Circuit has recently held that an ALJ appropriately "justified its RFC determination by explaining that [claimant's] subjective allegations of symptoms . . . were inconsistent with the objective medical evidence and [claimant's] activities of daily living." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022). The ALJ in this case has justified her RFC on essentially identical grounds.

Having performed its own review of the record, moreover, the Court finds substantial medical evidence which supports the RFC. The Court specifically notes that Plaintiff's physicians have indicated Plaintiff achieved maximum medical improvement and consistently recommended conservative treatment. Even Dr. Volarich only advised that Plaintiff continue a home exercise program and use over-the-counter analgesics as necessary. (*Id.* at 1359). Dr. Kutnik suggested Plaintiff "really use the arm for all activities." (*Id.* at 473). *See Walker v. Colvin*, 124 F. Supp. 3d 918, 934 (E.D. Mo. 2018) ("An ALJ may consider a plaintiff's conservative course of treatment as indicative that [her] symptoms are not disabling."). In addition, the medical records reflect that Plaintiff had been experiencing at least some pain and numbness in his hands as early as 1998 despite alleging a disability onset date of November 2016 and continuing his labor-intensive work as a tree trimmer. (Tr. at 339, 464, 1352).

Plaintiff specifically argues that the ALJ exceeded her authority by inferring limitations from the objective medical findings. The Court recognizes that an ALJ "may not draw upon [her] own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). It does not appear to the Court, however, that the ALJ improperly inferred limitations from the objective medical findings. Instead, the ALJ reasonably evaluated the objective medical findings along with other relevant evidence to establish an RFC with substantial support in the record. The Eighth Circuit has held, moreover, that the "interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citation omitted). While the ALJ did not find any medical opinion completely persuasive, it is apparent that the RFC reflects the ALJ's interpretation of such opinions along with the full record. The mere fact that the ALJ's RFC does not exactly mirror any physician's opinion does not automatically demonstrate that the ALJ made improper inferences. "Despite [Plaintiff's] dissatisfaction with how the ALJ

15

weighed the evidence, it is not this Court's role to reweigh that evidence." *Schmitt*, 27 F.4th at 1361 (citation omitted).

### Subjective Complaints of Disabling Pain

Plaintiff argues that the ALJ failed to properly consider his subjective complaints of pain. Per 20 C.F.R. § 404.1529, when evaluating disability the SSA will "consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." The Eighth Circuit has held that the ALJ must consider the five *Polaski* factors when considering a claimant's subjective descriptions of disabling pain: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Grindley*, 9 F.4th at 630 (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). But the ALJ is "not required to discuss each *Polaski* factor so long as [she] acknowledges and considers the factors before discounting a claimant's subjective complaints." *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (citation omitted).

"After careful consideration of the evidence," the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effect of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 79). Prior to this statement, and consistent with the Eighth Circuit's requirements, the ALJ recognized her obligation to assess Plaintiff's symptoms based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p. (*Id.* at 78). *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (citation omitted) (recognizing 20 C.F.R. § 404.1529 "largely mirror[s] the *Polaski* factors").

The Court finds that the ALJ appropriately discounted Plaintiff's allegations of disabling pain based on the objective medical evidence and Plaintiff's daily activities. The Eighth Circuit

has recently held that an ALJ "is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Grindley*, 9 F.4th at 630 (citation omitted). As extensively discussed above, the ALJ performed a careful review of the record before determining that the "objective medical evidence shows that the [Plaintiff's] upper extremity symptoms have largely resolved with surgery and are less limiting than the claimant alleged." (Tr. at 79). *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006) ("[T]he ALJ considered [claimant's] subjective complaints of pain but found independent reasons, each support by substantial evidence, to discredit those complaints.").

The ALJ also found that Plaintiff's "extensive daily activities" were "wholly inconsistent with allegations of debilitating pain in the upper extremities." (*Id.* at 80). In the Eighth Circuit, an ALJ may consider any inconsistencies between allegations of debilitating pain and a claimant's daily activities. *See Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007) (citation omitted). While Plaintiff disputes the exact scope of his activities, the record establishes that he did dishes, drove his car roughly six hours per week, mowed his lawn with a riding mower, gardened, harvested produce, fed his horses, woodworked, and tied fish lines. (*Id.*). Courts in this circuit have routinely held that far less strenuous activities are inconsistent with allegations of disabling pain from carpal tunnel syndrome. *See Russell v. Apfel*, 198 F.3d 251 (8th Cir. 1999) (per curiam) ("Painting the garage, adjusting the carburetor, and watering outside plants, particularly in light of [claimant's] claims of carpal tunnel and upper extremity arthritis, are inconsistent with his complaints of disabling upper extremity pain."); *Freeman v. Colvin*, No. 1:15-CV-132 PLC, 2016 WL 5405407, at *10 (E.D. Mo. Sept. 28, 2016) ("[E]vidence of [claimant's] daily activities (including washing dishes, doing laundry, sweeping, and using a computer) supported the ALJ's decision not to include gripping or manipulative limitations."); *Onder v. Colvin*, No. 4:12-CV-599 SNLJ/TIA, 2013 WL 5406605, at *17 (E.D. Mo. Sept. 25, 2013) ("Claimant is able to occasionally cut the

grass with a riding lawn mower, use the computer to check emails, go grocery shopping, perform some household chores such as vacuuming, doing the laundry, and putting away the dishes, drive, and occasionally making dinner."); *see also Swafford v. Saul*, No. 4:17-CV-2529 NAB, 2019 WL 4277314, at *5 (E.D. Mo. Sept. 10, 2019) (affirming ALJ's finding that claimant's hunting and lawn mowing were appropriate bases to discount subjective allegations of disabling pain).

It bears mentioning that the ALJ did not entirely discredit Plaintiff's subjective complaints of pain. The ALJ specifically recognized that Plaintiff had "residual pain and numbness in [his] bilateral arms and hands" and accordingly limited Plaintiff to light work with additional restrictions. (Tr. at 80). Plaintiff's surgeon, Dr. Kutnik, opined that Plaintiff had no restrictions concerning his carpal and cubital tunnel syndromes. The ALJ found this unpersuasive because "[e]ven though [Plaintiff's] symptoms have improved with treatment . . . there remain clinical abnormalities and [Plaintiff's] complaints of residual pain and numbness." (*Id.* at 81). In these circumstances, and especially considering Plaintiff's extensive daily activities, the Court cannot say that the ALJ erred by partially discounting Plaintiff's subjective complaints of disabling pain

## VII.   CONCLUSION

After careful consideration, this Court will affirm the decision of the ALJ because it is supported by substantial evidence in the record as a whole. *Adkins v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 547, 550 (8th Cir. 2018). First, the Court finds that the ALJ properly evaluated the opinion evidence by assessing each relevant opinion for supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2). Second, the Court has determined that the ALJ's RFC is supported by substantial evidence in the record as a whole, including some medical evidence, and the ALJ did not exceed her authority in reaching the RFC. The Court gave careful consideration to the ALJ's description of the objective medical evidence, medical opinions, and Plaintiff's subjective complaints of pain,

along with the Court's own review of the full record, in reaching this conclusion. Finally, it appears clear to the Court that the ALJ appropriately discounted Plaintiff's subjective complaints of disabling pain based on the factors identified in *Polaski* and 20 C.F.R. § 404.1529. Therefore, because the ALJ's opinion is supported by substantial evidence in the record as a whole and falls within the "available zone of choice," the Court will affirm the decision of the Commissioner. *Papesh*, 786 F.3d at 1131.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint (Doc. 1) is **DISMISSED with prejudice**. A separate Judgment will accompany this Memorandum and Order.

Dated this 17th day of May, 2022.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE